16-MJ-6125-MPK

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Gregory M. Federico, having been first duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1.    I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), United States Department of Justice, and have been so employed for approximately nine years. I am currently assigned to the Lakeville Resident Agency, within the Boston Division. My responsibilities encompass the investigation of various criminal offenses, including the investigation of crimes involving the distribution of controlled substances.  I am currently assigned to the South Eastern Massachusetts Gang Task Force ("SEMGTF") located in Brockton, Massachusetts (MA), an assignment I have had since July 2011. Prior to my current assignment, I was assigned to the Organized Crime Drug Enforcement Task Force ("OCDETF") for approximately one year. Since becoming an SA with the FBI, I have participated in dozens of narcotics investigations as a case agent and in subsidiary roles relating to the distribution of controlled substances, including cocaine, heroin, fentanyl, cocaine base, marijuana and other illegal substances in violation of the federal and state narcotics laws, including 21 U.S.C.

§§ 841(a)(1) and 846. I have participated in narcotics investigations that involve wiretaps, physical surveillance, undercover transactions, the execution of search warrants, debriefings of informants and witnesses, the review of taped conversations and the analysis of telephone, financial and drug records. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs.

2. I have personally participated in the investigation since approximately November of 2015. I am familiar with the facts and circumstances of this investigation based on information I received from a variety of sources, including but not limited to law enforcement officers and agents, physical surveillance, confidential informants, sources of information, public records, telephone toll records, subscriber data and pen register and trap and trace information. Since this Affidavit is being submitted for the limited purpose of securing authorization for a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for obtaining a search warrant.

3. I make this affidavit in support of an application for a search warrant under FED. R. CRIM. P. 41(c) for information from

the following cellular telephones:

a)   iPhone with IMEI: 354391069686280 (hereinafter **"Cellular Phone A"**), referenced in ¶¶ 14-26;

b)   A white Apple iPhone with a cracked screen and red case, Model A1453, FCC ID: BCG-E2642A, IC: 579C-E2642A, IMEI: 352033063936772 (hereinafter **"Cellular Phone B"**), referenced in ¶¶ 29-39;

c)   A black/gray Kyocera flip phone, Model S2151 Kona, FCC ID: V65S2151, DEC: 268435462509963363, HEX: A00000419807631502 (hereinafter **"Cellular Phone C"**), referenced in ¶¶ 29-39;

d)   A white Apple iPhone 6 plus with large cracked screen and black case, Model A1522, FCC ID: BCG-E2817A, IC: 579C-E2817A, IMEI: 354451066906188 (hereinafter **"Cellular Phone D"**), referenced in ¶¶ 29-39;

e)   A blue/black AT&T flip phone, Model Z222, FCC ID: Q78-Z222, S/N: 325252818284 (hereinafter **"Cellular Phone E"**), referenced in ¶¶ 29-39;

f)   A blue/black AT&T flip phone, Model Z222, FCC ID: Q78-Z222, S/N: 328456883569 (hereinafter **"Cellular Phone F"**), referenced in ¶¶ 29-39;

g)   Verizon Samsung flip phone with SKU: SMB311VZPP**,** MEID HEX: A0000048EC44F1 (hereinafter **"Cellular Phone G"**), referenced in ¶¶ 14-31 and 40-41;

h)   AT&T flip phone with S/N: 3284525921FA, IMEI: 867940026471572 (hereinafter **"Cellular Phone H"**), referenced in ¶¶ 14-31 and 40-41;

i)   Kyocera Phone HEX: A00 000 419 865 1C 1502 Model S2151 Kona (hereinafter **"Cellular Phone I"**), referenced in ¶¶ 42-47;

j)   iPhone with IMEI: 359297060673992 (hereinafter **"Cellular Phone J"**), referenced in ¶¶ 42-47; and

k)   Alcatel one touch phone with MEID HEX: A10 000 4AC 0DE 38, Model 2017B (hereinafter **"Cellular Phone K"**), referenced in ¶¶ 42-47;

(hereinafter, collectively referred to as the **"Cellular**

**Phones**"), all in the custody of law enforcement.

4.   I believe that there is probable cause to establish that the **Cellular Phones** contain evidence, fruits and instrumentalities of the commission of criminal offenses including federal offenses enumerated in 18 U.S.C. § 2516, namely, the possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); the use of a communication facility in violation of 21 U.S.C. § 843(b); the possession of a controlled substance, in violation of 21 U.S.C. § 844; conspiracy to distribute, and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; and possession of a firearm during and in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c). The **Cellular Phones** are more fully described in Attachment A, with the information to be searched being more fully described in Attachment B.

<u>**SUMMARY OF THE EVIDENCE**</u>

5.   This investigation concerns a long-running conspiracy to distribute fentanyl in the area of Brockton, MA. The evidence established that **Gilvan MONTEIRO** ("**MONTEIRO**"), **Edson GOMES** ("**GOMES**") and **Luis DACOSTA** ("**DACOSTA**") (hereinafter, collectively referred to as the "**Target Subjects**") obtained

fentanyl from suppliers and sold it to drug customers. Several of the customers were shared by **MONTEIRO**, **GOMES** and **DACOSTA**.

### I. THE INITIATION OF THE INVESTIGATION

6.    On or about September 2015, the Brockton Police Department ("BPD") and Massachusetts Police Department ("MSP") brought the above-captioned matter to the attention of the Federal Bureau of Investigation ("FBI").  The law enforcement agencies believed that **MONTEIRO**, **GOMES** and **DACOSTA** were responsible for the distribution of heroin/fentanyl and numerous shootings and violent crimes in Brockton over the past year.

7.    Based on information from confidential informants, sources of information, subscriber data, telephone toll records and physical surveillance, **MONTEIRO, GOMES** and **DACOSTA** are believed to be narcotics distributors operating together within the Brockton area.  **DACOSTA** initially lived at 80 Turner Street, 2nd floor, in Brockton, MA with his girlfriend, Seidica Monteiro, her mother Erminda Miranda, as well as her brothers, **GOMES** and **MONTEIRO.**  Law enforcement agencies have previously conducted controlled narcotics purchases of fentanyl and/or heroin from **MONTEIRO**, **GOMES** and **DACOSTA**.

8.    At the beginning of the investigation, through the use of surveillance, pole cameras, GPS pings and telephone interceptions, it was shown that all three **Target Subjects** were associated with 80 Turner Street, Brockton, MA. The

investigation later revealed that **MONTEIRO, GOMES** and **DACOSTA** distributed narcotics to drug customers at various hotels and side streets in Brockton, MA.

**II. TITLE III ELECTRONIC SURVEILLANCE**

9.   Based in part upon controlled drug purchases from **MONTEIRO**, **GOMES** and **DACOSTA**, I discovered that two cellular telephone numbers (Target Telephone I) and (Target Telephone II) were being used by **MONTEIRO** and **DACOSTA,** respectively, to facilitate the drug trafficking conspiracy.   Beginning in December 2015, the FBI obtained court authorization to intercept wire communications from Target Telephones I and II. Intercepted wire communications established that Target Telephone I was used by **MONTEIRO** and Target Telephone II was used by **DACOSTA**, and that they operated a fentanyl business together in Brockton.

10.  Agents thereafter identified two other cellular telephone numbers used by **DACOSTA** and **GOMES** in furtherance of the drug-trafficking organization (Target Telephone III and Target Telephone IV).   Agents obtained court-ordered authorization for the interceptions of Target Telephones III and IV in January 2016.   Interceptions of Target Telephone III confirmed that **DACOSTA** was engaged in an ongoing drug trafficking organization.   No interceptions were obtained because **Target Subjects** discontinued using Target Telephone IV

before interceptions.

11.  Agents discovered that another phone (Target Telephone V) had been activated to replace Target Telephone IV, previously used by **GOMES**.  Agents then obtained court-ordered authorization for the interceptions of Target Telephone V in February 2016.  Interceptions of Target Telephone V confirmed that **GOMES** was engaged in an ongoing drug trafficking organization.  The investigation additionally resulted in the recovery of a firearm that **GOMES** had left in an associate's vehicle. [1]

12.  In February 2016, Agents identified another phone (Target Telephone VI) that was believed to be used by **DACOSTA** in furtherance of his drug trafficking organization.  In March 2016, Agents obtained court-ordered authorization for the interceptions of Target Telephone VI.  Interceptions of Target Telephone VI confirmed that **DACOSTA** had previously been involved in the drug trafficking business and was attempting to resupply his drug trafficking business through a supplier. [2]

---

[1] *See Infra* ¶¶ 14-26.

[2] The summaries of these calls are based upon draft, summary translations and logs of conversations that have been prepared by monitors.  For each of the calls and text messages discussed, the monitoring agent's interpretations of code words or other terminology, as well as their interpretation of the general substance of the calls, are based upon their familiarity with this investigation and their training and experience as well as information they have received from fellow law enforcement officers in this and other districts.  However, this is an ongoing process and the summaries are not final transcripts.

III. **SUMMARY OF THE TELEPHONE SEIZURES**

13. During the course of the investigation, Law enforcement agents seized multiple cellular telephones during car stops, arrests and a hotel search warrant. The seizures of the cell phones and related probable cause are described below:

A. **February 11, 2016 Seizure of:**

a) **Cellular Phone A**

14. On February 9, 2016, from approximately 11:07 p.m. to 11:48 p.m., **GOMES** using Target Telephone V, exchanged several answered calls/text messages with Gabriel NIEVES ("NIEVES") who was using 617-549-1021.

15. At approximately 9:37 p.m., **GOMES** made an outgoing call to NIEVES and asked **GOMES** if he was at the Holiday Inn. NIEVES ordered a half (5 grams) for $250, "what up bro im about to swing where you at the holiday," and "alright bro im about to come by grab a half I got 250 for you, alright bro."

16. At approximately 11:07 p.m., **GOMES** made an outgoing call to NIEVES. During this call, NIEVES explained that he was just about to head on the highway and then asked **GOMES** to make him a five (grams), "damn nigga I was just about to head on the highway," and "yeah nigga im about to be there nigga just make me a five dude."

17. At approximately 11:10 p.m., **GOMES** received an incoming call from NIEVES. During the call, NIEVES stated that he was in the back right now and **GOMES** told him to come inside.

8

Following the telephone call, text messages are exchanged between approximately 11:13 p.m. and 11:14 p.m. in which the hotel room number, "104" was provided.

18.  At approximately 11:48 p.m. on this same date, **GOMES** made an outgoing telephone call to NIEVES.  During the call, NIEVES told **GOMES** that the weight of the narcotics that he had just purchased was low, "yeah yo that shit was like 4 grizzy just letting you know bro one of em was 2 one of them was 2 grams and the other one was like 2.3 like 2 just letting you know nigga."  **GOMES** asked NIEVES if he is sure, "alright you sure though" and NIEVES told **GOMES** he will be in touch with him tomorrow, "hit you tomorrow."

19.  During the above reference telephone calls/text messages, agents believe NIEVES purchased a quantity of narcotics from **GOMES**.  They also believe that NIEVES had ordered "five," which I believe to be five grams of narcotics but received a lesser quantity, "yeah yo that shit was like 4 grizzy just letting you know bro one of em was 2 one of them was 2 grams and the other one was like 2.3 like 2 just letting you know nigga."  I also believe that NIEVES intended to meet **GOMES** the following day to obtain additional narcotics, "hit you tomorrow."

20.  On February 10, 2016, from approximately 11:30 a.m., to 10:20 p.m., several answered telephone calls are exchanged

between **GOMES,** using Target Telephone V, and NIEVES who was using 617-549-1021.

    21.  On this same date at approximately 10:20 p.m., **GOMES** placed an outgoing call NIEVES.  The call was as follows:

| | |
|---|---|
| **GOMES:** | No I'm saying um yo no bullshit dude I got the toast in there bro on my mom's |
| NIEVES: | Damn E where did you leave it dude? (Intelligible)  You got me riding with that shit in the whip nigga? |
| **GOMES:** | Dogs my bro be on dogs..... |
| NIEVES: | Yo E dogs for me to turn around...right now my nigga is like.  Yo let me, let me see this bitch.....damn E my nigga. How do you forget that bro?  Let me see this bitch nigga and then I'll come through.... |
| **GOMES:** | (intelligible)....right? |
| NIEVES: | Huh? |
| **GOMES:** | There's a bag on the floor right there where I was staying right? You see it right? |
| NIEVES: | Hold on |
| **GOMES:** | Its there I left it there.  I know it's there. |
| NIEVES: | (unintelligible).....where under my seat? |
| **GOMES:** | Nah it's in the bag the Play Station bag |
| NIEVES: | Hold on |
| **GOMES:** | You see it right? Right there on the floor bro? |
| NIEVES: | Yeah it is bro. |
| **GOMES:** | you see it right? |
| NIEVES: | Yeah Fuck (intelligible). |

**GOMES:**    Yo I got the blick in there bro so on dogs so be easy bro on my mom bro

NIEVES:    I know nigga I know you do bro...so let me see...I'm getting....

**GOMES:**    Yeah you see it in there right?

NIEVES:    What?

**GOMES:**    You see the toast in there right?

NIEVES:    Yeah

**GOMES:**    You seen it?

NIEVES:    Yeah

22.  Later in the conversation, NIEVES and **GOMES** made arrangements for NIEVES to deliver the "toast" or "blick" or "burner" (all referring to a gun) to **GOMES** in Brockton.  NIEVES stated, "…you know that I am going to bring you the burner come on you don't even have to say no more."  **GOMES** explained, "(unintelligible) that shit is not mine it's for peoples dude you feel me."

23.  Agents believe that **GOMES** told NIEVES that he left his gun ("toast" and "blick") in NIEVES' car in a bag on the floor and wanted it brought back to **GOMES** by NIEVES.

24.  On February 11, 2016 at approximately 2:40 a.m., MSP troopers, with this and other information, stopped the vehicle that NIEVES was driving in Brockton and recovered a loaded Smith and Wesson .40 caliber handgun under the driver's seat.  NIEVES was arrested on state firearm charges.

25.  The following day, on February 11, 2016 at 12:16 p.m., **GOMES** received an incoming call on Target Telephone V from telephone number 508-484-3070, used by an unknown male ("UM").  During this telephone call **GOMES** discussed the gun he left in Nieves's car:

> **GOMES:**   Dude I was so zinged out yesterday, on my mom's, I forgot to get the shit off the whip dude um - from Danielly?
>
> **GOMES:**   Nah, I had the toast dude...
>
> UM:   Nah you did you had that with you
>
> **GOMES:**   What?
>
> UM:   The shit you just said, you grabbed it had it with you you grabbed it ...
>
> **GOMES:**   No, you remember ... I know remember how I got dropped off right there...

26.  During the above referenced telephone call agents believe that **GOMES** was discussing when he mistakenly left the "toast" (gun) in NIEVES' car.

27.  I believe that there is probable cause to establish that **Cellular Phone A** seized from NIEVES is assigned telephone number 617-549-1021 and that it was the telephone used by NIEVES on February 10, 2016 at 10:20 p.m. to converse with **GOMES** regarding the firearm and narcotics.

**B. <u>April 3, 2016 Seizure of</u>:**

   **b) Cellular Phone B;**
   **c) Cellular Phone C;**
   **d) Cellular Phone D;**

**e) Cellular Phone E; and**
**f) Cellular Phone F.**

28.  On April 1, 2016, this Court signed a search warrant authorizing agents and officers assigned to this investigation to collect location information on telephone number 404-422-5362.  This telephone number was intercepted on numerous occasions related to the distribution of fentanyl during this investigation.

29.  On April 3, 2016 at approximately 2:30 p.m., law enforcement officers from the South Eastern Massachusetts Gang Task Force ("SEMGTF"), including your affiant, along with Massachusetts State Police Troopers conducted surveillance, with the assistance of the court authorized GPS Ping location information on telephone number 404-422-5362, on **Target Subjects** and other known associates of their drug-trafficking operation. At approximately 4:09 p.m., the surveillance team began following a black BMW with Massachusetts registration 39T348.

30.  At approximately 4:09 p.m., SEMGTF officers observed the BMW with no front license plate and excessively tinted windows parked on N. Manchester Street.  The operator of the vehicle was a known associate of the **Target Subjects**, later identified as Jeffery Oliveira ("Oliveira"), was subsequently joined by a passenger, later identified as Alezio Lopes ("Lopes").  The vehicle departed and commenced to drive erratically, including making several turns through residential

areas and ignoring traffic laws, in an attempt to "clean" itself from law enforcement detection.  Based on my training and experience, it was a driving technique known to me to be used by street level drug dealers to elude law enforcement's discovery of their illegal activities.

31.  This vehicle then proceeded to make multiple quick stops at numerous locations and used this driving technique to maneuver through the streets of Brockton.  Based on our training and experience, the SEMGTF recognized these actions to also be consistent with street level narcotics trafficking.  At approximately 6:30 p.m., the SEMGTF observed the black BMW stop in the Super 8 hotel parking lot located at Westgate Drvie, Brockton, MA.  Oliveira and Lopes exited the vehicle and entered the Super 8 Hotel.  This particular hotel and the adjacent hotel parking lots, have been historically used for narcotics and firearms trafficking activities.  Moreover, based on my training and experience, your affiant knows that narcotics-related transactions and activities occur in the parked cars of the hotel parking lot, as well as in the hotel rooms.

32.  Shortly thereafter, at approximately 6:40 p.m., Oliveira, Lopez, and an unknown male, later identified as Filomeno Monteiro ("Monteiro"), exited the Super 8 from the south entrance.  Lopes and Oliveira entered the black BMW, while Monteiro entered the driver's side of a blue BMW.  The black

14

BMW, driven by Oliveira, exited the lot first, followed closely by the blue BMW.  At approximately 6:45 p.m., we attempted to conduct a traffic stop of the vehicles in the proximity of Sycamore Street.  An MSP trooper activated his lights and sirens, but only the blue BMW driven by the Monteiro stopped. The black BMW, driven by Oliveira, sped off and turned onto 49 Sycamore Street, located in Brockton, in a sharp manner.

33.  A MSP Trooper observed the operator of the vehicle, Oliveira, throw a white iPhone with a red case (**Cellular Phone B**)**,** out of the driver's side window before the BMW stopped. The iPhone landed in the grass to the left of where the vehicle stopped.  Oliveira was then observed exiting the vehicle while throwing another phone, a black flip phone (**Cellular Phone C**), on the pavement by the left rear tire of the BMW.

34.  Oliveira attempted to enter the residence prior to being confronted and detained by members of the SEMGTF and MSP. A search of his person revealed that Oliveira had approximately $4000 in his possession.  He stated that he "won that money at the casino."

35.  Meanwhile, Lopes was ordered to the ground.  Two blue/black flip phones were subsequently observed on the ground by the right side of the vehicle (**Cellular Phone E** and **Cellular Phone F**).   Officers also observed Lopes attempting to conceal a key in his hand.  Upon inquiry from the officers, he dropped

the key to the ground. The key was used to open the glove compartment, in which the officers discovered two clear plastic bags full of narcotics. One bag contained four individual baggies of a chunky white powdery substance of suspected cocaine. The other bag contained eight individual baggies of light tan powdery substance that we believed, based on our training and experience, to be a mixture of heroin and fentanyl. Officers also observed a shiny handgun in the glove compartment. It was later determined to be a Jennings Firearms, Model J-22 pistol, serial #453065, loaded with one .22 caliber round of ammunition in the chamber and five rounds of .22 caliber ammunition in the magazine.

36. Upon further inspection of the vehicle, law enforcement also recovered a Samsung flip phone from the passenger's seat. Also recovered from the interior hand grip near the window controls of the driver's side was a clear plastic bag that contained three individual baggies of white powdery substance of suspected fentanyl. All of the contraband was seized by law enforcement.

37. At booking Oliveira told law enforcement that the black/gray Kyocera flip phone, **Cellular Phone C,** belonged to him and that telephone number 617-980-4147 was assigned to it. Telephone number 617-980-4147 was intercepted on multiple occasions during the interception of Target Telephones.

Specifically on or about March 17, 2016, **DACOSTA**, using Target Telephone VI, contacted the user of 617-980-4147 and advised that he (**DACOSTA**) had narcotics sales lined up for him.

38.  Both occupants of the vehicle, Oliveira, the operator of the vehicle, and, Lopes, the passenger, were arrested for multiple state firearms and narcotics charges.

39.  I believe there is probable cause to establish that the five phones recovered subsequent to the car stop on April 3, 2016, contain evidence of illegal drug dealing and illegal firearms charges.

    **C. April 5, 2016 Seizure of:**

        **g) Cellular Phone G; and**
        **h) Cellular Phone H.**

40.  On April 5, 2016 pursuant to an authorized arrest warrant signed this Court, **GOMES** was arrested without incident at 148 Highland Street, Brockton, MA.

41.  During the arrest two cell phones, **Cellular Phone G** and **Cellular Phone H**, were recovered from the second floor bedroom, on a dresser, wherein **GOMES** had been arrested.  The homeowner advised law enforcement that the cell phones belonged to **GOMES**.

    **D. April 5, 2016 Seizure of:**

        **i) Cellular Phone I;**
        **j) Cellular Phone J; and**
        **k) Cellular Phone K.**

42.  On April 5, 2016 pursuant to an authorized arrest

warrant signed by this Court, **DACOSTA** was arrested without incident at the Rodeway Inn 1005, Room #127, located at Belmont Street in Brockton.    A second occupant, Seidica Monteiro ("SEIDICA"), was arrested on narcotics and firearms-related state charges.

43. During the arrest numerous items associated with the distribution of narcotics and a firearm were observed.

44. On this same day a search warrant was issued by this Court, and executed at 1005 Belmont Street, Brockton, Room #127.

45. During the search cellular phones, **Cellular Phone I**, **Cellular Phone J** and **Cellular Phone K**, were seized along with a digital scale and plastic bags. All of which are consistent with the distribution of narcotics based on my training and experience and work on this investigation.    Additionally, a loaded Smith & Wesson 9mm firearm and a large clear plastic bag containing a white powdery substance of suspected fentanyl were seized.

46. It was later confirmed from the hotel maintenance staff, who had cleaned and inspected the room on April 4, 2016, that none of the items recovered during **DACOSTA's** arrest were present in the room prior to SEIDICA's request to occupy it.

47. I believe there is probable cause to establish that the three phones recovered subsequent to the arrest and search

of Room #127 in the Rodeway Inn on April 5, 2016, contain evidence of illegal drug dealing and illegal firearms charges.

## CONCLUSION

48.   Based on the information described above, I believe that probable cause exists to establish that evidence including records and data from the phones described above (and more fully described in Attachments A and B), contain federal offenses enumerated in 18 U.S.C. § 2516, namely, the possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); the use of a communication facility in violation of 21 U.S.C. § 843(b); the possession of a controlled substance, in violation of Title 21 U.S.C. § 844; conspiracy to distribute, and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; and possession of a firearm during and in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c).   Accordingly, I seek authority to search the **Cellular Phones** for, and to seize evidence more fully described in Attachment B.

Signed under the penalties of perjury this __4th__th day of May,

2016.

_____
Gregory M. Federico, Special
Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on May __4th__, 2016

_____
M. Page Kelley
United States Magistrate Judge
District of Massachusetts

**ATTACHMENT A**

**DESCRIPTION OF THE ITEMS TO BE SEARCHED**

(a)   One iPhone with IMEI: 354391069686280;

(b)   One white Apple iPhone with a cracked screen and red
      case, Model A1453, FCC ID: BCG-E2642A, IC: 579C-
      E2642A, IMEI: 352033063936772;

(c)   One black/gray Kyocera flip phone, Model S2151 Kona,
      FCC ID: V65S2151, DEC: 268435462509963363, HEX:
      A00000419807631502;

(d)   One white Apple iPhone 6 plus with large cracked
      screen and black case, Model A1522, FCC ID: BCG-
      E2817A, IC: 579C-E2817A, IMEI: 354451066906188

(e)   One blue/black AT&T flip phone, Model Z222, FCC ID:
      Q78-Z222, S/N: 325252818284;

(f)   One blue/black AT&T flip phone, Model Z222, FCC ID:
      Q78-Z222, S/N: 328456883569;

(g)   One Verizon Samsung flip phone with sku: SMB311VZPP,
      MEID HEX: A0000048EC44F1;

(h)   One AT&T flip phone with S/N: 3284525921FA, IMEI:
      867940026471572;

(i)   One Kyocera Phone HEX: A00 000 419 865 1C 1502 Model
      S2151 Kona;

(j)   One iPhone with IMEI: 359297060673992; and

(k)   One Alcatel one touch phone with HEX: A10 000 4AC
      0DE 38, Model 2017B.

21

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of federal offenses enumerated in 18 U.S.C. § 2516, namely, the possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); the use of a communication facility in violation of 21 U.S.C. § 843(b); the possession of a controlled substance, in violation of Title 21 U.S.C. § 844; conspiracy to distribute, and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; and possession of a firearm during and in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c) included those related to:

A. **GILVAN MONTEIRO, EDSON GOMES** and **LUIS DACOSTA**

B. The identity of any co-conspirators, as well as any co-conspirators' acts taken in furtherance of the crimes listed above;

C. For the phones described in this warrant:

   1. Evidence of who used, owned or controlled the phone;

   2. Evidence of malicious computer software that would allow others to control the phone, evidence of the

lack of such malicious software, and evidence of the presence or absence of security software to detect malicious software;

3. Evidence of the attachment of other computer hardware or storage media;

4. Evidence of counter-forensic programs and associated data that are designed to eliminate data;

5. Evidence of the times the phones were used;

6. Passwords, encryption keys, and other access devices that may be necessary to access the computer equipment; and

7. Records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage of either data or storage media.